UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREAT MIDWEST INSURANCE COMPANY,

        Plaintiff,                Case No.:

v.

FLORIDA CONSULTING & DEVELOPMENT
GROUP, LLC, and WILLIAM MACDONALD,

        Defendants.
_____/

## COMPLAINT

Plaintiff, Great Midwest Insurance Company ("Great Midwest"), through counsel, sues Defendants FLORIDA CONSULTING & DEVELOPMENT GROUP, LLC ("FCDG"), and WILLIAM MACDONALD ("Mr. MacDonald"), who are sometimes collectively referred to in this Complaint as the "Indemnitors") and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.     This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.     Great Midwest is a Texas corporation that maintains its principal place of business in the State of Texas, making it a citizen of Texas pursuant to 28 U.S.C. § 1332(c)(1).

3.      FCDG is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Winter Haven, Florida. FCDG's sole member, based on publicly available information, is:

a.  William MacDonald, a person of the full age of majority, who, on information and belief, resides in Polk City, Florida.  Thus, FCDG is a resident of Florida for purposes of 28 U.S.C. §1332(c)(1).

4.      William MacDonald is an individual who, on information and belief, resides in Polk City, Florida. Thus, Mr. MacDonald is a resident of Florida for purposes of 28 U.S.C. §1332(a)(1).

5.      The cause of action alleged herein falls within the jurisdictional limits of the Court because Great Midwest seeks to recover more than $75,000.00 from the Indemnitors exclusive of interest, attorneys' fees and costs.

6.      Venue is appropriate in this Court because a defendant resides in Polk County, Florida within the Tampa Division of the Middle District of Florida.

## GENERAL ALLEGATIONS

7.      As part of its business, Great Midwest issues construction performance and payment bonds and stands as surety for selected contractors on construction projects.

8.      In connection with its work, FCDG, from time to time, required surety bonds on construction projects.

9.      Before Great Midwest would agree to issue bonds on behalf of FCDG, it required that the Indemnitors enter into an indemnity agreement with Great Midwest.

2

10.    Specifically, on August 23, 2022, the Indemnitors each executed a General Indemnity Agreement ("GIA") in favor of Great Midwest. A true and correct copy of the GIA is attached and incorporated into this Complaint as **Exhibit "A."**

11.    According to the GIA, the Indemnitors agreed, in part, to:

3.    INDEMNIFICATION. The Indemnitors hereby, jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 3.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any Indemnitor, whether or not such Bond(s) has been issued prior to execution hereof and whether or not Surety shall have paid any amount on account thereof . . .

[GIA, § 3].

## THE BOND, CLAIM AND SETTLEMENT AGREEMENT

12.    FCDG entered into a subcontract ("Subcontract") with Marmer Construction, Inc. ("Marmer") to perform certain work on a construction project referred to as Cypress Garden Apartments located in Arcadia, Florida ("Project"), where Marmer was acting as the general contractor.

13.    At the request of the Indemnitors and in reliance on the GIA, Great Midwest issued a Performance Bond (the "Bond") in connection with the Subcontract naming FCDG as principal and Marmer as obligee.

14.    Disputes arose between FCDG and Marmer and Marmer asserted a claim against Great Midwest under the Bond for damages allegedly incurred as a result of FCDG's failure to honor its obligations under the Subcontract.

15.    Great Midwest filed suit against Marmer in the matter entitled "Great Midwest Insurance Company v. Marmer Construction, Inc.," bearing case number 2:24-cv-01175 on the docket of the United States District Court for the Middle District of Florida, Ft. Myers Division (the "Litigation") and Marmer filed counterclaims against Great Midwest and FCDG (the "Counterclaims").

16.    Great Midwest incurred losses, attorneys' fees and expenses in resolving Marmer's claims and in connection with the Bond, the Marmer claim, and the Litigation in the amount of $176,216.70 (the "Loss").

17.     Great Midwest made demand on the Indemnitors for indemnity and reimbursement of the Loss.

18.    Great Midwest and the Indemnitors thereafter entered into a Mutual Release and Settlement Agreement (the "Settlement Agreement") wherein the Indemnitors agreed to pay to Great Midwest the sum of $151,216.70 pursuant to a payment plan set forth in the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached as **Exhibit "B."**

19.    The payment plan required the Indemnitors to make the following payments on the following dates:

> $30,000.00 on or before March 1, 2026;
> $7,500.00 on or before the first day of each month thereafter commencing on

April 1, 2026, for 15 months; and
$8,716.70 on or before July 1, 2027.

20. The Indemnitors made the first payment of $30,000.00 but thereafter failed to make any further payments. Accordingly, the Indemnitors are currently in default of the payments that were due on April 1, May 1 and June 1, 2026.

21. The Settlement Agreement provides, in part:

2. In further consideration of Great Midwest's execution of this Agreement, the Indemnitors agree to execute the attached Promissory Note in the amount of $176,216.70. Great Midwest agrees to deem the Promissory Note fully satisfied so long as the Indemnitors do not default on any payment set forth in paragraph I of this Agreement. In the event that the Indemnitors fail to timely make any payment set forth in paragraph I of this Agreement, Great Midwest shall provide the Indemnitors with written notice of default by email to their counsel, Joshua Brown at JBrown@PetersonMyers.com. Should Indemnitors fail to make any past due payments within five (5) business days of the notice of default, Great Midwest shall be entitled to recover the entire amount of the Promissory Note, less any payments made by the indemnitors, as well as all attorneys· fees and costs incurred in enforcing its rights and collecting amounts owed under this Agreement and the Promissory Note.

22. By email dated June 11, 2026, Great Midwest sent a notice of default to Joshua Brown, counsel for the Indemnitors, in accordance with the Settlement Agreement. A copy of the June 11, 2026, email is attached as **Exhibit "C."**

23. Great Midwest did not receive a response to the June 11, 2026 email and followed up with the Indemnitors, through Mr. Brown, by email dated June 23,2026. A copy of the June 23, 2026, email is attached as **Exhibit "D."**

24. By email on June 23, 2026, Mr. Brown responded: "Good afternoon, thanks for the follow up. I haven't responded to your email because I have not heard

anything from my client yet." A copy of the June 23, 2026, email from Mr. Brown is attached as **Exhibit "E."**

25.     Additionally, in connection with the Settlement Agreement, the Settling Indemnitors executed a Secured Promissory Note & Confession of Judgment in Favor of Great Midwest Insurance Company ("Promissory Note"). A true and correct copy of the Promissory Note is attached as **Exhibit "F."**

26.     Under the Promissory Note, the Indemnitors agreed:

4.     <u>Late Charge</u>. If Surety does not receive any payment within ten (10) business days of the date on which it is due, Debtors shall pay a late charge of Two Thousand Five Hundred Dollars ($<u>2,500.00</u>). The late charge will be due and payable with the late payment or with the next regular payment, as Surety may direct.

27.     The Indemnitors have been late on three payments to date, entitling Great Midwest to late charges of $7,500.00 plus any late fees that accrue through the date of payment by the Indemnitors.

28.     Under the Promissory Note, the Indemnitors further agreed:

9.     <u>Default and Remedies</u>. Upon the occurrence of any of the following events of default (each an "Event of Default" and collectively, "Events of Default"), Surety may, in addition to all other remedies, declare immediately due and payable all sums owed hereunder:

(a) If Debtors fail to pay any amounts due hereunder within (5) business days of Notice of Default from Surety;
(b) If any Debtor breaches any provision of this Note;
(c) If any Debtor makes a general assignment for the benefit of creditors;
(d) If any Debtor enters into a composition agreement with its creditors; or
(e) Upon the commencement of bankruptcy, reorganization, arrangement or liquidation proceedings, State or Federal, by or against any Debtor, or the

6

appointment of a trustee, receiver, conservator or other judicial representative, similar or dissimilar, of the stock thereof (whether alone or with other assets).

Upon the occurrence of an Event of Default, the entire unpaid principal balance of this Note, and all other sums due by Debtors hereunder shall, at the option of Surety, and without notice or demand to Debtors, become due and payable immediately and payment of the same may be received and recovered in whole or in part at any time by one or more of the remedies provided to Surety in this Note or available to Surety under applicable law; and in such case Surety may also recover all costs of suit and other expenses in connection therewith, together with reasonable attorneys' fees for collection. The remedies of Surety as provided herein shall be cumulative and concurrent and may be pursued singly, successively or together against Debtors or any one (or more) of them at the sole discretion of Surety, and such remedies shall not be exhausted by any exercise thereof but may be exercised as often as occasion therefor shall occur.

* * *

12.    Interest.  If no Event of Default occurs, then interest shall not accrue under this Note.  Following the occurrence of any Event of Default hereunder, interest shall then accrue on all amounts outstanding hereunder at a rate of eighteen percent (18%) per annum, or the Maximum Rate allowed by law, compounded yearly on the anniversary date of this Note.  Interest calculated in accordance with this paragraph shall be calculated at a daily rate equal to $1/365^{th}$ ($1/366^{th}$ in a leap year) of the rate per annum herein provided and shall be charged and collected on the actual number of days elapsed.

29.    Despite the notice of default, the Indemnitors have not cured their defaults.

30.    Great Midwest is entitled to recover all amounts due under the Settlement Agreement and the Promissory Note, to wit: $146,216.70 ($176,216.70.00 less the $30,000.00 payment), late fees, interest and attorneys' fees and costs.

31.     Great Midwest has incurred and continues to incur attorneys' fees and costs in enforcing the Indemnitors' obligations under the Settlement Agreement and the Promissory Note.

32.     Great Midwest has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

33.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## BREACH OF CONTRACT

34.     Great Midwest realleges and incorporates paragraphs 1 through 33 as if fully set forth herein.

35.     The Settlement Agreement and Promissory Note are valid and enforceable contracts.

36.     The Indemnitors have breached and/or defaulted on their obligations under the Settlement Agreement and the Promissory Note by failing to make payments as set forth therein.

37.     Despite demand, the Indemnitors have failed to cure their breaches and/or defaults.

38.     Great Midwest is entitled to recover from the Indemnitors all amounts due under the Settlement Agreement and the Promissory Note, to wit: $146,216.70 ($176,216.70.00 less the $30,000.00 payment), late fees, interest and attorneys' fees

8

and costs incurred in this action and in enforcing the Indemnitors' obligations under the Settlement Agreement and the Promissory Note.

WHEREFORE, Great Midwest demands judgment against FCDG and Mr. MacDonald jointly and severally, in the amount of $146,216.70, plus all late fees, interest, attorneys' fees and costs incurred by Great Midwest in this action and in enforcing the Indemnitors' obligations under the Settlement Agreement and the Promissory Note, post-judgment interest, and such further relief as this Court deems just and proper.

Dated: June 30, 2026

PASKERT DIVERS THOMPSON

/s/ *Alberta L. Adams*
ALBERTA L. ADAMS
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
100 North Tampa Street, Suite3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for Great Midwest*
*Insurance Company*

9